Mr. Shulman here. May it please the court. This court should reverse each of the reverse the PTAB in each of the five re-examinations on appeal for two reasons. First, and the threshold issue in this case, is that the examiner overstepped her statutory bounds when she rejected all of the claims on appeal over art or combinations of art that exceeded the substantial new question of patentability in contradiction of this court's holding in Belkin. Namely, we hold that under the statute available prior art may only be considered to answer the specific question of patentability found by the director. Isn't Belkin clearly distinguishable from your case because there it was an instance where the director had specifically found the prior art did not raise a substantial question. So that's all Belkin was dealing with that particular scenario and that's clearly not what happened here. The director did not make a finding that there was not a substantial question, right? I don't believe factually that that's true and the reason is that the director affirmatively found that there was no S&Q. In Belkin, it's not clear whether the director affirmatively found that there was no S&Q because the procedure is the art was presented in Belkin. So in Belkin, four pieces of prior art were presented to the office. The office found an S&Q based on one piece of art. It's not clear whether there was ever an order in Belkin that said, and we also don't find an S&Q as to these, the office typically doesn't do that. The office will issue an order identifying the S&Q and then implicitly it must have rejected all of the other requests. I'm reading from Belkin that says we agree with the director that the board did not err in not considering issues that the director had found not to raise a substantial new question of accountability. And that's absolutely true and in this case, so the procedural posture in Belkin really didn't matter and the reason was the only reason it mattered in Belkin whether or not the either the PTAB or this court could address the art that did not raise the S&Q is because the statute prohibits it. If the statute allowed either the office or the PTAB to consider art that did not raise the S&Q, then Belkin's failure to petition to include that as an S&Q wouldn't have mattered. The only reason that that failure to petition to include that as an S&Q mattered is because at that point you are limited to what is in the S&Q and when Belkin and when this court reviewed Belkin, Belkin had asked this court to look at that other prior art and interestingly in this case, all of the art that was without found formed the basis for the two grounds of rejection. So Wanky, Sakai and then either GBA-53 or Heyman were before the examiner at least in four of the cases prior to determining that there was an S&Q. And so we could make the same argument that implicitly the office declined to find an S&Q based on that and again when the director issues an order identifying the art for the resolution of the question, it never, at least in my experience, goes on and says and we declined to find an S&Q as to everything else that's out there. It doesn't do that. It identifies the S&Q and so implicitly the fact is the office must have declined to find an S&Q based on Sakai, Wanky, GBA-53 and Heyman because it was available art prior to finding the S&Q at least on every examination except the 250 which was the first one that was filed. The fact is that there was... How does that help you? I'm just looking back over the history of trying to keep some kind of control on the re-examination process. Aren't you better off having a full re-examination as is conceivably available or else you just go through it again at trial? Frankly, your honor, no I don't think so and in this case there are two specific reasons. There's a procedural reason and a substantive reason. The substantive reason is that if we get to the point of resolving the S&Q and a re-examination certificate issues as I believe the statute requires, at that point we go back to the district court having and list the state and in this case all these patents have been stayed for over four years in the district court. In some cases with only two years left on the patent. In the meantime, if Belkin applies here and as on page 51 of our opening brief, we identify those claims affected by Belkin in the form in which they should have been allowed because they had overcome the S&Q and we have at least three patents that have claims that should have been allowed in their original form without amendment and that fact brings us back to the district court without implicating intervening rights which in this case is probably worth tens of millions of dollars in damages. I would welcome the opportunity to go back to the district court even if a subsequent re-examination were filed because it's the district court's discretion and said you know what we've waited long enough we've been stayed for four years we've only got two years left. The third-party requester when the Belkin issue was raised two years ago could have filed another petition for re-examination. The director sui sponte could have and but that's not where we are and so that's the substantive issue. We would be back in the district court addressing tens of millions of dollars of intervening rights because we shouldn't have had to amend the claims. The procedural issue is also what happened here which is if an S&Q is properly found under section 303 and 304 what happens next is there is an opportunity for the patent owner to file a patent owner statement so there's at least one opportunity to address the S&Q. Then if that prior art is a rejection because that's a higher standard than the S&Q you get another opportunity to respond to the first office action so that's a second opportunity as of right to address that prior art. What happened here is the the rejections were made in a final rejection which is now characterized by the office is basically like a post hoc well that was really an S&Q but it was a final office action and under the rules the rights of a patent holder or an applicant to address new arguments make new amendments introduce new evidence either by way of declaration or otherwise are severely limited after final office action. It's at the discretion of the examiner whether to enter that opportunity to respond to those references. I mean I think you actually were the person that brought forward some of those references, right? There were ideas filed earlier in the case but the rejections didn't happen until they became final and so at that point but not all of it. GB 853 and the Hayman reference were of record already in two of the patents they were in the original prosecution history of two of the patents on appeal that was the 790 and 905 they were in the original prosecution history so they were already of record. Sakai was submitted prior to an S&Q by the third party requester prior to an S&Q being found in four of The IDSs were for two reasons. One, all five cases were originally before two examiners and one examiner had three, one examiner had two and then they were combined to be all before the same examiner. We filed an IDS to make the record complete again because the case was in litigation so lest we come back to the district court and somebody say well you you hit the ball you didn't file an IDS. Get rid of that issue. It's purely a litigation process. You refer to some of these references in your IDS right? Do you view that the Patent Office therefore doesn't look at that? I mean you were the ones that brought this prior art forward as having some relevance here. Whether the IDS requires it, whether the Patent Office rules because there's nothing in the statute that requires an IDS to be brought so these are the Patent Office rules that say you submit an IDS. It doesn't, that prior art is only that which forms the basis of the SNQ. That was the holding of Belkin and in fact this court in Belkin when it addressed the idea that the court that the the Patent Office should search all available prior art because that's what the 37 CFR says. This court said no that the statute trumps the regulations which trumps the MPEP and in fact what they said was they said thus the fact that section what this is on page 1384 of Belkin the second to last paragraph of that page because this was Belkin's argument that you do a search of all available prior art. This court said the fact that section 1.104 states the examiner shall make a thorough investigation of available prior art does not affect the analysis. In any event in order to reconcile what may otherwise appear to be conflicting provisions, this is the holding that I cited, we hold that under the statute available prior art may only be questions of patentability found by the director. The fact of the matter is that this court, we have a limited statutory scheme here where there is a limited new question of patentability to an issued patent and a limited review is initiated solely to resolve that question. Now the directors one of their arguments and the board's argument was that Belkin was inter partes and that therefore there's a distinction to be drawn between the ex parte here and that case. What is your response to that? The statute that this court construed, the inter parte statute is identical to the ex parte statute. If you look on page 39 and 40 of our opening brief, we lay the statute side by side and the language that this court interpreted was sections 312 and 313 of the inter parte statute which lines up virtually identically to section 303 and 304 of the ex parte statute. Furthermore the fact that Belkin was inter partes while they referenced repeatedly that it was inter partes the fact that it was inter partes really had nothing to do with that statutory construction argument. There's no reason why the fact that there might be a third party requester as opposed to a completely ex parte proceeding. That didn't affect the analysis at all. What about Belkin where it says it's 1383? It's funny because it's talking about inter partes but it's like the ex parte statute but it cites the parenthetical quote that on his own initiative at any time the director may determine whether substantial new question of patentability is raised by the director. Doesn't that give the director enormous leeway in the conduct of these proceedings? Well absolutely and we wouldn't contest that the director can't initiate a new SNQ by finding a substantial new question of patentability. At any time means at any time which means but the director has to restart that process. You can't read 303 as binding and then ignore section 304 and 305 which says you get the patent owner statement then the then the office has to issue a rejection. We're not contesting that the director could not sua sponte have used this art to find an SNQ but what should have happened is once the claims were found to overcome the SNQ either because in original form the first the first rejection went beyond what was used for different art so the SNQ was overcome or the SNQ was not an issue or because the claims were broken says if there is no substantial new question of patentability there is no re-examination. The re-examination should have entered and a certificate should have issued. At that point the director could as could the third-party requester have requested an additional re-examination and the fact that the statute permits that is fine we're not contesting that. It can't do it in the middle of enduring and within an existing re-examination proceeding. I see. Thank you. Good morning. May it please the court. I'd like to begin by addressing Belkin. You are exactly correct Judge Prost that Belkin concerned a very different issue. What was at stake in Belkin was there was an inter-parties re-examination with a third-party requester. The issue before the board was whether or not they had jurisdiction to consider a challenge by the third-party requester in the inter-parties re-examination to the initial SNQ determination and the court quite the board and the court quite properly concluded based on 312C which expressly provides that in an inter-parties re-examination neither party has a right to appeal the initial SNQ determination. So that was really what was at issue. As a corollary holding what the court held was that when there has been an affirmative determination of that there is a certain reference or prior art does not raise an SNQ that the court cannot then that the examiner cannot then write a rejection based on that prior art and that is neither of those issues are present here. What's present here is an ex-party re-examination. 303 is actually different from 312. 303C actually provides an opportunity for the patent owner to actually challenge the SNQ determination. Here PACTA declined to do that. It didn't preserve its rights but there was no question here about jurisdiction. The board would have had jurisdiction to consider any challenge to the SNQ determination but what PACTA failed to do was preserve its rights. You're not drawing a distinction between ex-parties and who initiates the examination, is that right? Ex-party and inter-parties, is there a distinction in who can initiate? Yes there is because in 303 in the ex-party context actually the director can initiate as well as on his own, sua sponte. A distinction with respect to the question, is that right? There has to be a substantial question. But like Judge Newman, I thought one of the arguments you were making in your brief is that even if Belkin is read more broadly it doesn't matter because it is a distinction to be made between the inter-parties and the ex-party procedures. Am I wrong about that? The difference in the procedures, well there are a couple differences in the procedures. One is 303 gives even additional latitude in the 303 for the director to initiate the re-examination and also in the 303 versus 312 there's differences in the right of appeal to the board on the SNQ determination. But really what's relevant here is that in Belkin what was the art that the court said could not be utilized in a rejection was art that had been determined to not raise an SNQ. Here all of the prior art that's being used in the rejections did raise an SNQ and there's no question about that. So that's the primary distinction here. Belkin really doesn't have... Well you're right about that it did raise an SNQ but it was not the original SNQ that was presented, right? Well some of them actually was the original SNQ. Some of the rejections were founded on the actual SNQs that were proposed by the requester. But this is all about, I mean your friend's argument here is about the fact that there was additional prior art brought in that wasn't included in the original SNQ, right? There are two things that happened during prosecution and I will take you also to the statute and to your own case law to say why I think that it's completely appropriate what the examiner did here. But two things that happened during prosecution, one is that they amended their claims multiple times after the first office action and secondly they did bring in prior art in the IDS. Now they contest this but the 853 patent, the British patent and Hammond were first presented in the re-examinations in an IDS presented by them. And you see that at A1051, A2723 and A1846. Now the Sakai reference, in the first two re-examinations which were the 250 and the 790, that reference was presented by them after the first office action and that's in A1051 and A3397. In the others, Sakai which came on a little bit later, the third party requester raised Sakai and Sakai was used in the first office actions. Is there a due process problem or some sort of response problem that you call the exchange with your friend in terms of that if it had come up originally they would have had more, as I understood it, they would have had more or a different opportunity to respond and that opportunity was limited in the context in which it arose here. There was no due process issue here. They had no lost opportunities. First of all, with respect to the S&Q determinations, they had the opportunity to challenge the S&Q determination at every step along the way and they chose not to. In fact, after the order they chose not to and two of them they waived that right at A2695 and A3241 and the others they didn't file a statement at A426, A1007 and A1832. After the first office action, they could have again challenged the underlying, the implicit S&Q determinations in the rejections there. They did not challenge the S&Q. They did not after the final rejection or even in their appeal right before the board. Now, with respect to the rejections, they were given opportunities to present evidence all the way along the way. After the first office action, they presented two declarations by Mr. Del Duca at A1026 and A1097. After the final rejection, they came in and they brought in the third Del Duca declaration and they explained that this was just an example in the 250 patent. And finally, even in the reply brief to the board, they brought in another declaration, the Hunt declaration, which was even that was considered by the board. So there was no, really, and they amended their claims multiple times throughout prosecution. In the case of the 250, they amended it at A1074, again at A1091 and at A1173. There was no lack of due process in this re-examination. You mentioned the distinction between the inter-parties and the ex-parties' reviews. As a matter of policy, why and how should we treat them differently or recognize a distinction? I mean, the primary distinctions, again, are that the director, for obvious reasons, ex-party, the director can initiate an ex-party re-examination on his own initiative. The other difference is in the appeal rights in 312, neither party can challenge an S&Q determination before the board. That's a petitionable matter only. In the ex-party context, the patent owner can challenge an S&Q determination. The third-party requester cannot. There are differences when the order issues. There's an opportunity for a statement in an ex-party, but not in inter-parties. And the third-party requester can reply in the ex-party. Third-party requester can participate more actively in the inter-parties, obviously. Those are the primary differences between the two. But what's really at issue here is whether or not, and what was decided in Belkin was very limited, was simply that prior art that has been affirmatively determined to not raise an S&Q cannot be used in a rejection. And that's not what was going on here. Now the statute, 303, obviously, as Judge Protas alluded to, gives broad discretion to the director to use to combine art that's been submitted by the third-party requester with other prior art to discover their own prior art. 305... That was what I understood his response. That was what his response is, but I think it's a fair indication that the director is giving broad latitude in combining prior art. And moreover, when you go to 305, 305 directs that re-examination is to be conducted according to the provisions established for initial examination under Sections 132 and 133. So 305 is just a signal that once you get past, and at the whole point of the S&Q process is to weed out those requests so that the patent owner is not burdened with frivolous requests for re-examination, so the office isn't burdened. So the whole process of 303 and 304 is to sort of weed out those bad requests for re-examination. But once it's determined that there is prior art that raises a substantial new question, then you go to 305, then you move into the re-examination process. So there's the one additional safeguard which has been at issue throughout, which is when, if there is new art, let's say in all fairness this is information that ought to be of record, ought to be of sighted in the give and take on re-examination, whether it's ex-party or inter-parties. How does one get that into the loop? And the objection that we hear is that it has to be brought up early enough in the cycle so they have an opportunity to go through the system of responding and amending. And so it does in a sense take us back to a due process question. Does it not? That there are additional procedures rather than fewer if in all fairness and objectivity there is new art to be cited. So aren't they right in that case? Not that there's an automatic allowance or anything else, but they have to have an adequate opportunity to respond and the way it was done, they didn't have that opportunity. And they didn't have that opportunity, well they did have that opportunity. They had the opportunity to present all of this evidence. They brought in declarations after the final rejection, they brought in declarations even during the appeal process. After final rejection? Yes. Unless the practice has changed dramatically, that's not so easy. And the reason it was permitted here was because they came in and they said well this, we have not seen this particular combination of prior art before and I point you to A1179 with respect to the 250 patent and this happened in each of them. The PACTA came in and explained that this rejection was new, this prior art they hadn't seen before and they were permitted to bring in their declaration and it was fully considered. That's the third Del Duca declaration. But moreover, I think what's important here is this practice that they're suggesting would be extremely inefficient. Every single time that the examiner was to stumble upon another reference or there could be even a simple limitation where they needed to apply a different reference, we'd have to go back and go through this two month waiting period before and go through this whole process. And that's simply contrary to what 305's mandate that re-examinations are to be conducted with special dispatch. But the pressure of inefficiency, this is exactly it. And I would think especially in inter-parties re-examination, it isn't a question of what the examiner stumbles upon, but what the adverse party thinks to bring forward when requesting the inter-parties re-exam. Well, this is the ex-party re-examination here, but in this case, the examiner applied those very references that were brought forward by the patent owner. Okay, ex-party, but not initiated by the patent owner. Not initiated by the patent owner, no. Okay. But the references that were utilized in the final rejections were references that were brought to the attention of the examiner by the patent owner. And they never alleged that they were not aware of these references and could have provided them earlier. And why shouldn't the examiner have an obligation to cite all of those first time around if they're to be relied upon? They're in the record, they're in the history. These references, the 853, I respectfully disagree, Judge Newman, the 853 and the Hammond references were not part of the record, the re-examination record, until they were brought into the record by the patent owner. But isn't there a search obligation on the examiner? Certainly there's a search obligation, and the examiner did the best they could, but they also, they had art that was presented to them, and they do the best they can, but they don't necessarily always find every art at the get-go. Any additional questions? Thank you. There's a couple of points I want to make. First, directly to that conversation you were just having about the searching of the art and whether or not the office had an opportunity to make these rejections. In the 457 patent alone, which is on page 27 of our, 28 of our brief, there were 33 substantial new questions of patentability, and still they managed to find rejections that did not form the basis of any of those 33 SNQs. So it's not like they didn't have an opportunity, didn't do the search. They did all that, and they still managed to reject claims based on rejections that were not part of the SNQ. I want to talk about first this idea of the… Let me make sure I understand this. So you would require a separate SNQ determination for every piece of prior art that's added? If it is a new combination or a new question, section 304 requires the director to issue an order for resolution of that question. This whole idea, and what I heard is, well, there was implicitly there were SNQs. No, section 304 says the director must issue an order identifying the SNQ. You can't read that out of the statute, and I want to talk about this idea that Velkin had some sort of a different scope. The PTO makes a remarkable admission on page 50 of its brief, and there it's trying to address its prior position in Velkin, where it took the position the PACT had advocated here, namely, two years ago. In trying to distinguish that position, it says, quote, and the director acknowledged, talking about its Velkin brief, and the director acknowledged that there is no distinction between section 303 ex parte and section 312 inter partes only, and they emphasize only, with respect to the scope of available prior art. Well, if the scope of available prior art is the same as inter partes, and they briefed in Velkin that inter partes is limited to that question, period, end of discussion, and now they're saying it's the same as ex partes, well, that disposes of really what the central issue is in the case. Everything having to do with 312C. I guess I'm confused here, because I don't think that's what they're saying. I think they're saying that Velkin, in Velkin, there was an explicit rejection of the SNQ, and that was what Velkin was about. So their comments with respect to what they were arguing in Velkin don't really have a bearing. I mean, in this circumstance, at least there's a distinction to be drawn, because there was no explicit rejection, right? I don't know whether there was an explicit rejection or not. If you look on pages of the appendix 3953 and 3954, and this is reprinted in large part on page 18 of our reply brief, this is the PTO's brief in Velkin, and this is important, because it addresses that question specifically. They say Velkin next argues that 312 does not restrict the universe of prior art to be considered during a reexamination. This court expressly rejected this argument. They cite in re-recreative, and at that point, there's a footnote that says recreative interpreted 303, which is the ex parte, but we're talking about 312. Velkin argues the distinction is not relevant in determining the scope of the available prior art. The director agrees. I see I'm out of time. Thank you. All rise. The court is now adjourned until tomorrow morning at 10 a.m. Thank you. Thank you. Thank you. Thank you.